Case No. 24-40259

———————————————

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————————

Jeffrey Moats,

Plaintiff-Appellant,

v.

National Credit Union Administration Board, A Federal Administrative Agency; Todd M. Harper, In their official capacity as Members of the National Credit Union Administration Board; Kyle S. Hauptman, In their official capacity as Members of the National Credit Union Administration Board; Rodney E. Hood, In their official capacity as Members of the National Credit Union Administration Board; Jennifer Whang, In her official capacity as an Administrative Law Judge and Inferior Officer of the United States,

Defendants-Appellees.

———————————————

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division
Honorable Jeffrey V. Brown, District Judge
No. 3:23-cv-147

———————————————

### BRIEF OF APPELLANT JEFFREY MOATS

———————————————

ADITYA DYNAR
MOLLY E. NIXON
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
202.888.6881
ADynar@pacificlegal.org
MNixon@pacificlegal.org

*Counsel for Plaintiff-Appellant*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellant: | Counsel for Appellant: |
|---|---|
| Jeffrey Moats | Aditya Dynar of Pacific Legal Foundation, Arlington, VA |
| Jeffrey Moats | Molly Nixon of Pacific Legal Foundation, Arlington, VA |
| Appellees | Counsel for Appellees: |
| Todd Harper | John Lewis of U.S. Department of Justice, Washington, DC |
| Todd Harper | Daniel Aguilar of U.S. Department of Justice, Washington, DC |
| Todd Harper | Joshua Salzman of U.S. Department of Justice, Washington, DC |
| Kyle Hauptman | John Lewis of U.S. Department of Justice, Washington, DC |
| Kyle Hauptman | Daniel Aguilar of U.S. Department of Justice, Washington, DC |

| | |
|---|---|
| Kyle Hauptman | Joshua Salzman of U.S. Department of Justice, Washington, DC |
| Rodney Hood | John Lewis of U.S. Department of Justice, Washington, DC |
| Rodney Hood | Daniel Aguilar of U.S. Department of Justice, Washington, DC |
| Rodney Hood | Joshua Salzman of U.S. Department of Justice, Washington, DC |
| National Credit Union Administration Board | John Lewis of U.S. Department of Justice, Washington, DC |
| National Credit Union Administration Board | Daniel Aguilar of U.S. Department of Justice, Washington, DC |
| National Credit Union Administration Board | Joshua Salzman of U.S. Department of Justice, Washington, DC |
| Jennifer Whang | John Lewis of U.S. Department of Justice, Washington, DC |
| Jennifer Whang | Daniel Aguilar of U.S. Department of Justice, Washington, DC |
| Jennifer Whang | Joshua Salzman of U.S. Department of Justice, Washington, DC |

/s/ Aditya Dynar
ADITYA DYNAR
*Counsel for Plaintiff-Appellant*

ii

## Statement Regarding Oral Argument

Appellant respectfully requests that the Court schedule oral argument in this case. This case involves the validity of statutes prohibiting district courts from deciding structural constitutional questions.

The Court has already granted the parties' request to submit this case alongside two other cases—*Burgess* and *Ortega*—to the same panel for decision. *Burgess v. Fed. Dep. Ins. Corp.*, No. 22-11172; *Ortega v. Off. of the Comp. of the Currency*, No. 23-60617.

*Burgess v. Fed. Dep. Ins. Corp.*, 639 F. Supp. 3d 732, 741 (N.D. Tex. 2022), called the jurisdictional issue presented here "a matter of first impression." The court below (the Southern District of Texas) expressly created an intra-circuit conflict with *Burgess* that this Court must now resolve. ROA.439. Unlike *Burgess*, which arrives at this Court in a preliminary posture, and *Ortega*, which is an appeal from the final agency decision, this case presents jurisdiction as the only issue raised on appeal. An oral argument would, therefore, aid the Court's resolution of the case.

## Glossary

| ALJ | Administrative Law Judge |
|---|---|
| APA | Administrative Procedure Act |
| Edinburg | Edinburg Teachers Credit Union |
| FCUA | Federal Credit Union Act |
| FDIC | Federal Deposit Insurance Corporation |
| FRB | Board of Governors of the Federal Reserve System |
| FTC | Federal Trade Commission |
| NCUA | National Credit Union Administration |
| NCUAB or Board | National Credit Union Administration Board |
| OCC | Office of the Comptroller of the Currency |
| OFIA | Office of Financial Institution Adjudication |
| PCAOB | Public Company Accounting and Oversight Board |
| ROA | Record on Appeal |
| SEC | Securities and Exchange Commission |

# Table of Contents

**Page**

Certificate of Interested Persons ................................................. i

Statement Regarding Oral Argument ..................................... iii

Glossary ............................................................................... iv

Table of Authorities .............................................................. vii

Introduction ........................................................................ 1

Jurisdictional Statement ....................................................... 2

Questions Presented .............................................................. 2

Statement of the Case ........................................................... 3

    A. The National Credit Union Administration ..................... 3

    B. Jeffrey Moats .............................................................. 4

    C. Proceedings in Federal Court ....................................... 5

Standard of Review ............................................................... 7

Summary of the Argument ..................................................... 7

Argument ............................................................................. 9

I.  The FCUA does not expressly or impliedly strip federal district
    court jurisdiction to decide structural constitutional claims .............. 9

    A. The FCUA cannot be read to expressly strip jurisdiction .............. 9

        1. The FCUA references neither 28 U.S.C. § 1331
           jurisdiction nor constitutional claims ......................... 9

        2. Fundamental principles and canons of interpretation
           support a construction that retains district court
           jurisdiction over Moats's claims ............................... 11

    B. The FCUA does not impliedly strip district court jurisdiction ..... 14

II. The District Court's construction of the FCUA renders it unconstitutional as applied ................................................................ 19

   A. Precluding meaningful judicial review raises constitutional concerns ........................................................................................ 20

   B. The Constitution cannot be read to deny a remedy where there is a right ................................................................................ 22

Conclusion ............................................................................................ 25

Certificate of Service .......................................................................... 26

Certificate of Compliance ................................................................... 27

# Table of Authorities

**Page(s)**

## Cases

*Almeida-Sanchez v. United States,*
 413 U.S. 266 (1973) ................................................................ 11

*Axon Enter., Inc. v. FTC,*
 598 U.S. 175 (2023) ..................................................... *passim*

*Bank Markazi v. Peterson,*
 578 U.S. 212 (2016) ................................................................ 22

*Bank of Louisiana v. FDIC,*
 919 F.3d 916 (5th Cir. 2019) ................................................. 15

*Bowen v. Mich. Acad. of Family Physicians,*
 476 U.S. 667 (1986) ................................................. 13, 20, 24

*Bowles v. Russell,*
 551 U.S. 205 (2007) ................................................................ 22

*Burgess v. Fed. Dep. Ins. Corp.,*
 639 F. Supp. 3d 732 (N.D. Tex. 2022) ................................ iii, 6–7, 16

*Burgess v. Fed. Dep. Ins. Corp.,*
 No. 22-11172 (5th Cir.) ......................................................... iii

*Califano v. Sanders,*
 430 U.S. 99 (1977) ................................................................. 12

*Carr v. Saul,*
 593 U.S. 83 (2021) ................................................................. 19

*CFTC v. Schor,*
 478 U.S. 833 (1986) ................................................................ 18

*Cochran v. SEC,*
 20 F.4th 194 (5th Cir. 2021) ........................................... 15, 23

*Collins v. Yellen,*
 594 U.S. 220 (2021) ................................................................ 23

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg.*
 *& Const. Trades Council,*
 485 U.S. 568 (1988) ................................................................ 13

*Elgin v. Dep't of Treasury,*
  567 U.S. 1 (2012).................................................................20–21

*Free Enter. Fund v. PCAOB,*
  561 U.S. 477 (2010)....................................................................17

*Loper Bright Enters. v. Raimondo,*
  144 S.Ct. 2244 (2024)................................................................14

*Marbury v. Madison,*
  5 U.S. 137 (1803).......................................................................24

*Martin v. Hunter's Lessee,*
  14 U.S. 304 (1816)................................................................22, 24

*Norsworthy v. Houston Indep. Sch. Dist.,*
  70 F.4th 332 (5th Cir. 2023) .......................................................7

*Orr v. Merit Systems Protection Board,*
  379 F. App'x 333 (5th Cir. 2010)................................................7

*Ortega v. Off. of the Comp. of the Currency,*
  No. 23-60617 (5th Cir.) ........................................................iii, 7

*Reule v. Jackson,*
  114 F.4th 360 (5th Cir. 2024) .....................................................7

*SEC v. Jarkesy,*
  144 S.Ct. 2117 (2024)................................................................18

*Shalala v. Illinois Council on Long Term Care, Inc.,*
  529 U.S. 1 (2000)..........................................7, 9–10, 13

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994)............................................14–15, 19

*United States v. Fisher,*
  6 U.S. 358 (1805).........................................................................9

*Webster v. Doe,*
  486 U.S. 592 (1988)......................................................8, 20–21

*Wellness Int'l Network, Ltd. v. Sharif,*
  575 U.S. 665 (2015)....................................................................19

*Williams v. Dallas Area Rapid Transit,*
  242 F.3d 315 (5th Cir. 2001)........................................................7

## United States Constitution

U.S. Const. amend. VII ............................................................. 19

U.S. Const. art. II ....................................................... 11, 17, 19

U.S. Const. art. III, § 1 ........................................................... 22

U.S. Const. art. III, § 2 ............................................................. 9

## Statutes

8 U.S.C. § 1252(b)(9) ............................................................... 10

12 U.S.C. §§ 1751–1795k .............................................................. 3

12 U.S.C. § 1752a(b) ................................................................... 3

12 U.S.C. § 1752a(c) ................................................................... 3

12 U.S.C. § 1766 ......................................................................... 3

12 U.S.C. § 1766(d) ..................................................................... 3

12 U.S.C. § 1785(g)(1) ............................................................... 10

12 U.S.C. § 1786 ......................................................................... 3

12 U.S.C. § 1786(k) ................................................................. 8, 15

12 U.S.C. § 1786(k)(1) ........................................................... *passim*

12 U.S.C. § 1787(e)(1) ............................................................... 10

28 U.S.C. § 1291 .......................................................................... 2

28 U.S.C. § 1331 ................................................................. *passim*

42 U.S.C. § 405(h) ................................................................ 9–10

Pub. L. No. 86-354, 48 Stat. 1216 (1934) ...................................... 3

Pub. L. No. 91-206, 84 Stat. 49 (1970) .......................................... 3

Pub. L. No. 91-468, 84 Stat. 1009 (1970) ..................................... 11

Pub. L. No. 94-574, 90 Stat. 2721 (1976) ..................................... 12

Pub. L. No. 96-486, 94 Stat. 2369 (1980) ..................................... 12

# Other Authorities

3 Blackstone, William, *Commentaries on the Laws of England* ..................................................................... 24

Amar, Akhil Reed, *America's Constitution: A Biography* (2006) .............................................................. 22

Calabresi, Steven G. & Lawson, Gary S., *The Unitary Executive, Jurisdiction Stripping, and the* Hamdan *Opinions: A Textualist Response to Justice Scalia*, 107 Colum. L. Rev. 1002 (2007) ................................. 22

Dodd-Frank Wall Street Reform and Consumer Protection Act ................................................................... 3

Financial Institutions Reform, Recovery and Enforcement Act .................................................................... 3

Hamilton, Alexander, *The Federalist No. 82* (Cooke ed. 1961) ........................................................................... 22

Scalia, Antonin & Garner, Bryan A., *Reading Law: The Interpretation of Legal Texts* (2012) ........................................... 12

Whitehouse, Sheldon, *Restoring the Civil Jury's Role in the Structure of our Government*, 55 Wm. & Mary L. Rev. 1241 (2014) .............................................. 18

## Introduction

The National Credit Union Administration seeks to try Jeffrey Moats, the former CEO of the Edinburg Teachers Credit Union, for breach of fiduciary duty and unjust enrichment before an Administrative Law Judge who is unconstitutionally shielded from presidential removal. Moats filed this action in federal court, arguing that, in addition to the unconstitutional removal protections, the administrative proceeding deprives him of his right to a jury trial and due process, and that Congress violated the nondelegation doctrine by giving NCUA unguided discretion to choose to bring the enforcement action in-house or in federal court.

The District Court did not reach the merits, however, because it held that the Federal Credit Union Act expressly precluded the court's jurisdiction over all of Moats's claims. That decision should be reversed. The statutory provision the District Court relied on, 12 U.S.C. § 1786(k)(1), does not provide the clear statement Supreme Court precedent demands to explicitly strip jurisdiction of constitutional claims. Nor can it be read to strip jurisdiction implicitly.

If this Court finds that the FCUA *does* somehow strip jurisdiction of constitutional claims, such a reading would render the statute unconstitutional as applied here because it would bar meaningful review of Moats's structural constitutional claim, which presents a "here-and-now" injury—subjection to an unconstitutionally structured

1

decisionmaking process—a violation of his rights that will be "effectively lost" if review is deferred until after the in-house agency proceeding is over. *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

Regardless of how this Court reads the FCUA, the result is the same: the Court must reverse and vacate the District Court's decision and judgment, and remand for the district court to reach the merits.

## Jurisdictional Statement

Plaintiff-Appellant Jeffrey Moats appeals from the opinion and judgment of the Southern District of Texas dated April 9, 2024. ROA.431–ROA.441. Moats filed a timely notice of appeal on April 17, 2024. ROA.446–ROA.448. This Court's jurisdiction rests on 28 U.S.C. § 1291.

## Questions Presented

1. Whether the Federal Credit Union Act, 12 U.S.C. § 1786(k)(1), strips district courts of their 28 U.S.C. § 1331 jurisdiction to decide constitutional claims.

2. If it does, whether such jurisdiction stripping as applied in this case is unconstitutional because it would result in the irremediable loss of the right not to be subject to an unconstitutionally structured decisionmaking process.

## Statement of the Case

### A.    The National Credit Union Administration

Congress enacted the Federal Credit Union Act (FCUA), Pub. L. No. 86-354, 48 Stat. 1216 (1934), to regulate federal credit unions. 12 U.S.C. §§ 1751–1795k. In 1970, Congress created the National Credit Union Administration (NCUA), an independent agency in the executive branch, and gave the regulatory power over federal credit unions to NCUA and its Administrator. Pub. L. No. 91-206, 84 Stat. 49 (1970).

NCUA's Board (NCUAB or Board) comprises three members whom the President appoints with the Senate's advice and consent to staggered terms. 12 U.S.C. §§ 1752a(b), 1752a(c). They are subject to the President's at-will removal power. ROA.100. The Board has comprehensive powers to (1) make and (2) enforce federal law. 12 U.S.C. § 1766. As relevant here, NCUA also has the power to initiate and decide "case[s]" against CEOs of federal credit unions. 12 U.S.C. § 1786. In these cases, NCUA has the power, alongside other powers, to impose civil penalties and order lifetime industry bans. 12 U.S.C. § 1786.

NCUA may "delegate" "any and all" of its "duties," "authority, power, or function[s]" to "such persons as it shall designate or employ, … including any institution operating under [NCUA's] general supervision." 12 U.S.C. § 1766(d). Further, pursuant to the Financial Institutions Reform, Recovery and Enforcement Act and Dodd-Frank Wall Street Reform and Consumer Protection Act, NCUA and three other

banking agencies[1] adopted a series of interagency agreements, established the Office of Financial Institution Adjudication (OFIA), and delegated their respective adjudicative functions to this pool of ALJs. ROA.238.

### B.    Jeffrey Moats

Plaintiff-Appellant Jeffrey Moats served as CEO of the Edinburg Teachers Credit Union (Edinburg) for 25 years. ROA.431. Under his leadership, Edinburg was always at or near the top of performance metrics. ROA.199. Notwithstanding Edinburg's excellent financial condition, the Texas Credit Union Department placed it in conservatorship in March 2021, appointing the NCUA as conservator. ROA.200. NCUA fired Moats, seizing his personal property and documents. ROA.200, ROA.431. NCUA eventually returned the property and his retirement savings, though Moats has separately sued NCUA in Texas state court for post-termination benefits he is owed. ROA.201.

In April 2023—two years after Edinburg's placement in conservatorship and one day before the deadline to answer Moats's state-court complaint—NCUA served Moats with a Notice of Charges to commence agency proceedings against him. ROA.201, ROA.432. The Notice alleged that Moats breached fiduciary duties to Edinburg,

---

[1] The Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of the Currency (OCC), and the Board of Governors of the Federal Reserve System (FRB).

unjustly enriching himself, and demanded $4 million in restitution, at least $1 million in civil penalties, and an order prohibiting Moats for his lifetime from serving as a director, officer, or otherwise participating in the affairs of any insured depository institution. ROA.201.

Appellee Jennifer Whang was designated as the OFIA ALJ to preside over the administrative action. ROA.201. The administrative matter remains stayed by agreement of the parties. ROA.201, ROA.432.

### C. Proceedings in Federal Court

Moats filed this suit in the Southern District of Texas against NCUA, its board members, and ALJ Whang, seeking a declaration that the administrative adjudication at NCUA/OFIA is unconstitutional. In his first amended complaint, Moats asserted four claims: (1) OFIA's ALJ Whang is unconstitutionally shielded from removal with multiple layers of removal protection, (2) administratively proceeding against Moats deprives him of a jury trial, (3) administratively proceeding against Moats deprives him of the due process of law, and (4) giving NCUA the discretion to either bring in-house adjudicative actions or file suit in federal court violates the nondelegation doctrine. ROA.195–ROA.211, ROA.432.

Moats moved for summary judgment on all claims. ROA.253. The Defendants filed a cross-motion to dismiss and for summary judgment. ROA.284. As relevant here, NCUA asserted that the case should be dismissed because "Congress has expressly precluded district court

jurisdiction over all claims, including constitutional ones, that may affect a[n] NCUA proceeding." ROA.433. The Defendants relied on 12 U.S.C. § 1786(k)(1), which provides:

> The Board may in its discretion apply to the United States district court, or the United States court of any territory within the jurisdiction of which the principal office of the credit union is located, for the enforcement of any effective and outstanding notice or order issued under this section or section 1790d of this title, and such courts shall have jurisdiction and power to order and require compliance therewith. However, except as otherwise provided in this section or section 1790d of this title, no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section or section 1790d of this title or to review, modify, suspend, terminate, or set aside any such notice or order.

The court concluded that this section constitutes an "explicit bar to all of Moats's claims, constitutional or otherwise." ROA.439. It therefore dismissed the case with prejudice, ROA.441, without reaching the merits. Moats appealed. ROA.446.

The District Court's decision acknowledged that it created an intra-circuit conflict. *See* ROA.439. In *Burgess v. FDIC*, the Northern District of Texas considered a statute substantively identical to § 1786(k)(1) here and held that it did not explicitly or implicitly strip the court of jurisdiction over the plaintiff's constitutional claims. 639 F. Supp. 3d 732 (N.D. Tex. 2022), *pending on appeal*, No. 22-11172 (5th Cir.). Due to the

unresolved intra-circuit conflict, the Court assigned this case and *Burgess*, No. 22-11172, to the same panel. Doc. 29-2. A third case, *Ortega v. Office of the Comptroller of the Currency*, No. 23-60617, presents the same jurisdictional question and was also assigned to the same panel.

## Standard of Review

This Court reviews "the district court's dismissal for lack of subject matter jurisdiction *de novo.*" *Orr v. Merit Systems Protection Board*, 379 F. App'x 333, 335 (5th Cir. 2010) (citing *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001)). The issue of subject-matter jurisdiction cannot be waived, and federal courts are duty-bound to examine the basis of subject-matter jurisdiction at all stages. *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024). In an appeal from a grant of a motion to dismiss, this Court "accept[s] as true all well-pleaded facts and construe[s] the complaint in the light most favorable to the plaintiff." *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

## Summary of the Argument

Nothing in the FCUA expressly or implicitly strips federal district court jurisdiction to decide structural constitutional claims. The Supreme Court has enforced express bars on jurisdiction when a statute clearly references an otherwise applicable basis of jurisdiction. *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 10 (2000) (stating that statute providing that "'no action … shall be brought under section

7

1331 or 1346 of title 28'" "plainly bars § 1331 review" (simplified)). The FCUA says nothing about the 28 U.S.C. § 1331 district court jurisdiction Moats invoked in his complaint. And while the Supreme Court has held that a "special statutory review scheme" could implicitly preclude district court jurisdiction over challenges to agency action, 12 U.S.C. § 1786(k) fails each part of the three-factor implicit jurisdiction stripping test most recently applied by the Supreme Court in *Axon*, which looks at whether the statute's review scheme would foreclose all "meaningful" judicial review, whether the claims for which review is sought are "wholly collateral" to the statute's review provisions, and whether the claim is "outside the agency's expertise." 598 U.S. at 186.

If this Court finds that the FCUA nevertheless precludes district courts from deciding Moats's structural constitutional claims, such a bar would violate Moats's right not to be subject to an unconstitutionally structured proceeding. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) (noting that a "serious constitutional question … would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim" (citation omitted)); *Axon*, 598 U.S. at 191 (holding that appellate judicial review of agency respondent's "structural constitutional claims would come too late to be meaningful").

Accordingly, the Court should reverse and vacate the District Court's decision and judgment, and remand for the District Court to reach the merits.

## Argument

### I.  The FCUA does not expressly or impliedly strip federal district court jurisdiction to decide structural constitutional claims

Congress tracked Article III, § 2's words and vested federal district courts with "original jurisdiction" to decide "*all* civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added). Courts have long construed limitations on jurisdiction narrowly, requiring Congress to speak with "irresistible clearness." *United States v. Fisher*, 6 U.S. 358, 390 (1805).

With respect to constitutional claims, the Supreme Court has held that Congress can strip jurisdiction in two specific ways. First, it can do so expressly through a clear statement demonstrating that it intended to remove the entirety of district courts' jurisdiction granted by other statutes. *See, e.g.*, *Shalala*, 529 U.S. at 10. Second, a statute may be found to implicitly strip courts of jurisdiction, but before finding such a bar, courts must consider if doing so would bar meaningful review of claims that are wholly collateral to the agency's review process and outside of the agency's expertise. *Axon*, 598 U.S. at 185. Congress neither explicitly nor implicitly stripped district court jurisdiction over Moats's claims.

### A.  The FCUA cannot be read to expressly strip jurisdiction

#### 1. The FCUA references neither 28 U.S.C. § 1331 jurisdiction nor constitutional claims

In *Shalala*, the Supreme Court held that 42 U.S.C. § 405(h) "clearly" and "plainly bars [28 U.S.C.] § 1331 review … irrespective of whether the

individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." 529 U.S. at 10. In so concluding, the Supreme Court found dispositive the clear language of 42 U.S.C. § 405(h) providing that "[n]o action … shall be brought under section 1331 or 1346 of Title 28[.]" *Id.*

There is no express preclusion here because the FCUA does not even mention district courts' original jurisdiction under 28 U.S.C. § 1331. 12 U.S.C. § 1786(k)(1). Nor does Section 1786(k)(1) mention constitutional claims, which Congress surely knew how to do. *See, e.g.*, 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of *constitutional* and statutory provisions, … shall be available only in judicial review of a final order under this section." (emphasis added)).

Indeed, Congress demonstrated its ability to explicitly reference constitutional provisions—when it meant to—in the FCUA itself. *See* 12 U.S.C. § 1785(g)(1) ("notwithstanding any State constitution or statute which is hereby preempted") *and* 12 U.S.C. § 1787(e)(1) ("Notwithstanding any other provision of Federal law, the law of any state, or the constitution of any State, the Board … shall be subrogated to all rights of the accountholder[.]"). That it did not explicitly do so in Section 1786(k)(1) is, accordingly, all the more apparent.

### 2. Fundamental principles and canons of interpretation support a construction that retains district court jurisdiction over Moats's claims

Reading Section 1786(k)(1) to treat structural claims differently than nonstructural claims is not only compelled by the absence of a clear statement, but such a reading is also otherwise consistent with the text.

For example, 12 U.S.C. § 1786(k)(1) thrice repeats the phrase "this section [1786] or section 1790d of this title." If Moats's Article II claim is valid—and the Supreme Court's precedent compels such a conclusion on the merits (ROA.204–ROA.205)—then the NCUA "notice or order" is not issued "under this section or section 1790d," because no law can authorize "the issuance or enforcement of any notice or order" through an unconstitutional proceeding. 12 U.S.C. § 1786(k)(1); *see Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973) ("[N]o Act of Congress can authorize a violation of the Constitution."). Rather, Section 1786(k)(1) is best construed to cover claims that relate to "any specific substantive decision" of the agency or "to the commonplace procedures agencies use to make such a decision," which are nonstructural claims within an otherwise valid proceeding that would typically be reviewed after-the-fact in an appeal to the circuit court from the final agency decision. *Axon*, 598 U.S. at 189.

Furthermore, 12 U.S.C. § 1786(k)(1) in its current form was enacted in 1970. Pub. L. No. 91-468, 84 Stat. 1009 (1970). But Congress amended 28 U.S.C. § 1331 in 1976 and 1980, solidifying its intent to vest district

courts with original jurisdiction to decide *all* cases arising under the Constitution. Pub. L. No. 94-574, 90 Stat. 2721 (1976); Pub. L. No. 96-486, 94 Stat. 2369 (1980). The later-in-time enactment of what is the current 28 U.S.C. § 1331 trumps the earlier-in-time enactment of what is currently 12 U.S.C. § 1786(k)(1). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 327 (2012) (Between two legislative enactments, "the last in order of time shall be preferred to the first.") (quoting *The Federalist No. 78*). That reading would also be consistent with the Supreme Court's understanding of the 1976 version of Section 1331, through which it held that Congress "confer[red] jurisdiction on federal courts to review agency action, regardless of whether the [earlier in time] APA of its own force may serve as a jurisdictional predicate." *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Section 1786(k)(1), then, may be read to preclude district courts enjoining NCUA's issuance or enforcement of the notice of charges NCUA served on Moats, but Moats has not asked any federal court for a stay of administrative proceedings.[2] Nor has Moats asked a court to "review, modify, suspend, terminate, or set aside any [NCUA/OFIA] notice or order." 12 U.S.C. § 1786(k)(1). Rather, Moats has asserted that the

---

[2] OFIA proceedings are currently stayed by the agreement of the parties, not by operation of Section 1786(k)(1). *See, e.g.*, ROA.235 (OFIA order granting joint motion to stay administrative proceedings).

administrative adjudication is structurally invalid under the Constitution. ROA.205 (¶ 36).

And, even if the Court still finds that "[i]t would overstate matters to say that the foregoing analysis demonstrates beyond question that [Moats] may invoke general federal-question jurisdiction," "[a]ny remaining doubt [should be] resolved … by the longstanding canon that judicial review of executive action will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Shalala*, 529 U.S. at 43 (Thomas, J., dissenting from denial of jurisdiction even when statute *explicitly* barred § 1331 jurisdiction) (citations omitted).

Finally, the Court should reject the District Court's sweeping reading of Section 1786(k)(1) because it would force the Court to render a decision on its constitutionality, as explained in Part II, *infra*. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."); *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (stating that a statutory scheme which operates to deny meaningful judicial resolution of a constitutional question would itself raise "serious constitutional question[s]").

13

No one disputes that 12 U.S.C. § 1786(k)(1) does not specifically mention that the jurisdictional bar encompasses constitutional claims or specifically divests district courts of 28 U.S.C. § 1331 jurisdiction over such claims. Giving the section such a reading is not required by the text, would flout the clear statement requirement, and would raise serious constitutional questions, which we assume Congress did not intend to do sub-silentio. This Court should hold that the District Court's construction is not the "best reading" of the statute and reverse. *Loper Bright Enters. v. Raimondo*, 144 S.Ct. 2244, 2266 (2024).

### B. The FCUA does not impliedly strip district court jurisdiction

The Supreme Court has also held that it is possible to strip 28 U.S.C. § 1331 jurisdiction implicitly through a "special statutory review scheme" in which Congress typically provides for "review in a court of appeals following the agency's own review process," divesting district courts of their ordinary jurisdiction over the covered cases. *Axon*, 598 U.S. at 185–86. Critically, however, the Court held that such statutory schemes "d[o] not necessarily extend to every claim concerning agency action." *Id.* (applying the factors laid out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)). The Supreme Court's analysis in *Axon* resolves this case; the FCUA cannot be read to implicitly strip the district

courts of jurisdiction over Moats's wholly collateral, structural constitutional claims.[3]

In *Axon*, as here, the petitioners "sued in district court prior to an ALJ decision" and "charged that some fundamental aspect of the [respective agency's] structure violates the Constitution; that the violation made the entire proceeding unlawful; and that being subjected to such an illegitimate proceeding causes legal injury (independent of any rulings the ALJ might make)." *Id.* at 182. As here, the *Axon* petitioners "premised jurisdiction on district courts' ordinary federal-question authority … under 28 U.S.C. § 1331." *Id.*; ROA.197.

The *Axon* Court applied "three considerations" to decide "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'" 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 208).[4]

---

[3] The court below did not analyze implicit preclusion because it held that Section 1786(k)(1) expressly deprives it of jurisdiction to decide Moats's structural constitutional claims. ROA.439.

[4] While this Circuit applied the *Thunder Basin* factors to an FDIC provision very similar to 12 U.S.C. §1786(k) in *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), that implicit preclusion analysis did not have the benefit of the Supreme Court's 2023 opinion in *Axon*, which runs counter to *Bank of Louisiana*'s analysis of all three factors. Any effort by NCUA to rely on this Circuit's implicit preclusion analysis in that case, then, cannot stand. And the District Court was correct in its conclusion that a statement in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), that *Bank of Louisiana* "held that district court

15

First, the Court considered whether district court jurisdiction would "foreclose all meaningful judicial review of the claim." *Id.* (simplified). This factor "recognizes that Congress rarely allows claims about agency action to escape effective judicial review." *Id.* While disclaiming any "newfound enthusiasm for interlocutory review," the Court focused on Axon's assertion of a "'here-and-now' injury of subjection to an unconstitutionally structured decisionmaking process … irrespective of its outcome, or of other decisions made within [that process]." *Id.* at 192. The Court analogized its approach to such structural claims to doctrines of immunity, in which the complaining party has a right "*not* to stand trial or face other legal process." *Id.* (emphasis added, citation omitted). As with such immunity claims, the *Axon* petitioners would "lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over." *Id.*

Second, the Court considered whether the claim "was wholly collateral to the [statute's] review provisions." *Id.* at 185 (simplified). The "second and third [factors] reflect in related ways the point of special review provisions—to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Id.* at 186. The Court easily found Axon's claims to be collateral, "object to the

---

jurisdiction was *explicitly* divested" was dicta and not binding. ROA.435–ROA.436; *see also Burgess*, 639 F. Supp. 3d at 741.

Commissions' power generally, not to anything particular about how that power was wielded." *Id.* at 193.

The Court was similarly dismissive of the government's arguments on the third factor, whether Axon's claim was outside the agency's expertise. It held that its precedent "could hardly be clearer. Claims that tenure protections violate Article II … raise 'standard questions of administrative' and constitutional law, detached from 'considerations of agency policy.'" *Id.* at 194 (citing *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 491 (2010)).

The *Axon* Court, accordingly, held that neither the SEC nor the FTC's agency adjudication statutes "displace[d] district court jurisdiction" to decide "constitutional claims." *Id.* at 185.

The *Axon* analysis is equally applicable to the structural claims brought by Moats here. **First factor**: As with Axon, the availability of appellate review after final agency decision does not address the "problem … stemming from the interaction between [Moats's] alleged injury and the timing of review." *Id.* at 191. The injury Moats alleges is the "here-and-now injury" of "being subjected to unconstitutional agency authority—a proceeding by an unaccountable ALJ," with no possibility of a trial by jury. *Id.* (simplified); ROA.142–ROA.146 (¶¶ 35, 41, 46, 49–52). That injury "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Axon*, 598 U.S. at 191. Moats's claim is not about any eventual order the ALJ or NCUA might issue, it "is about

subjection to an illegitimate proceeding, led by an illegitimate decisionmaker" without a jury—a "grievance" about which "the court of appeals can do nothing [since a] proceeding that has already happened cannot be undone." *Id.*[5] So, the Court should conclude, as *Axon* did, that "[j]udicial review of [Moats's] structural constitutional claims would come too late to be meaningful." *Id.*

**Second factor**: Also as in *Axon*, Moats "challeng[es NCUA's and OFIA's] power to proceed at all, rather than actions taken in the agency proceedings." *Id.* at 192. His structural constitutional claims are, accordingly, "collateral to any [NCUA or OFIA] orders or rules from which review might be sought." *Id.* at 193 (simplified). The Court should conclude, as *Axon* did, that this factor also goes in Moats's favor.

**Third factor**: Finally, the structural constitutional claims presented here, like those presented by the *Axon* plaintiffs, "raise standard questions of administrative and constitutional law, detached from

---

[5] Moats's ALJ-removal-protection claim obviously aligns most closely with the claims considered in *Axon*, but the Supreme Court's decision last term in *SEC v. Jarkesy* reinforces Moats's jury trial right. 144 S.Ct. 2117, 2128–31 (2024). NCUA seeks $1 million in penalties alleging Moats committed fraud. ROA.214; ROA.230. In such suits, "adjudication by an Article III court is mandatory." *Jarkesy*, 144 S.Ct. at 2132. Congress has not authorized jury trials in NCUA/OFIA proceedings, nor could it, because the power to conduct jury trials is an "essential attribute of judicial power [that is] reserved to Article III courts." *CFTC v. Schor*, 478 U.S. 833, 851 (1986); *see also* Sheldon Whitehouse, *Restoring the Civil Jury's Role in the Structure of our Government*, 55 Wm. & Mary L. Rev. 1241, 1249, 1266 (2014).

considerations of agency policy." *Id.* at 194 (simplified). Moats's claims are "distant from [NCUA's and OFIA's] competence and expertise" because the agencies know "nothing special about the separation of powers." *Id.* Indeed, "agency adjudications are generally ill suited to address structural constitutional challenges" like those maintained here. *Carr v. Saul*, 593 U.S. 83, 92 (2021). As in *Axon*, the third factor weighs in favor of finding no jurisdictional bar.

Since all three *Thunder Basin* factors "point … toward allowing district court review" of Moats's structural constitutional claims, they are not "of the type" that 12 U.S.C. § 1786(k)(1)'s second sentence precludes district courts from reaching. *Axon*, 598 U.S. at 195–96.

## II. The District Court's construction of the FCUA renders it unconstitutional as applied

If this Court finds that the FCUA does strip district courts' jurisdiction over structural constitutional claims, such a provision is unconstitutional as applied here because it would deny Moats all meaningful review of his structural constitutional claims.[6]

---

[6] Again, Moats believes the denial of his Seventh Amendment right to a jury trial also presents a structural claim. *Cf. Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 707 n.1 (2015) (Thomas, J., dissenting) ("There is some dispute whether the guarantee of a jury trial protects an individual right, a structural right, or both[.]"). But this Court need not decide that issue, given that Moats's Article II removal-power claim so directly mirrors a claim considered by the Supreme Court in *Axon*.

## A. Precluding meaningful judicial review raises constitutional concerns

In *Webster v. Doe*, the Supreme Court reaffirmed its previous holdings that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." 486 U.S. at 603. And its reason for requiring "this heightened showing" was "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.*; *see also Bowen*, 476 U.S. at 681 n.12 (stating that a statutory scheme which operates to deny meaningful judicial resolution of a constitutional question would itself raise "serious constitutional question[s]"). The Court clarified in *Elgin v. Dep't of Treasury* that *Webster*'s "heightened standard" does not apply to statutes that "provid[e] for meaningful review of [a plaintiff's] claims." 567 U.S. 1, 9–10 (2012). Accordingly, we know that a statute that denied meaningful review of a plaintiff's constitutional claims would raise a serious constitutional question.

The Court's decision in *Axon* resolves that question of "meaningful review," as far as Moats's structural claims are concerned. Axon was in the same position at Moats, seeking district court review of its claim that it could not be subjected to an unlawful adjudication. The Supreme Court explained: "Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of

20

powers. The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order[.]" 598 U.S. at 191.

The Supreme Court highlighted the crux of the issue in emphasizing that "Axon would have the same claim had it *won* before the agency." *Id.* When the claim alleges an "illegitimate proceeding, led by an illegitimate decisionmaker," "as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* As such, and as the Court held in *Axon*, "[j]udicial review of [an agency respondent's] structural constitutional claims would come too late to be meaningful." *Id.* The District Court's conclusion that Moats's "claims may be 'meaningfully addressed in the Court of Appeals'" on appeal from the final NCUA decision is in direct conflict with the Court's reasoning in *Axon*. ROA.438.

If this Court reads the FCUA to strip jurisdiction over structural constitutional claims, the result is that Moats would not be able to obtain meaningful review of his claims. That outcome directly implicates the "serious constitutional question" the Supreme Court avoided in *Webster*, *Elgin*, and *Axon*. Constitutional avoidance, therefore, counsels in favor of district court jurisdiction here.

## B. The Constitution cannot be read to deny a remedy where there is a right

The Supreme Court has held that Congress can only "decid[e] what cases the federal courts have jurisdiction to consider" "within constitutional bounds." *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Bank Markazi v. Peterson*, 578 U.S. 212, 227–28 (2016) (explaining that Congress may not regulate federal court jurisdiction in an unconstitutional manner).

Article III, § 1, vests *all* of the federal government's judicial power in the "supreme Court and such inferior Courts as the Congress may from time to time ordain and establish." Under Article III, constitutional cases must be decided in *some* federal court. While Congress can strip jurisdiction from district courts, it cannot wrest all constitutional claims from all federal courts. *See* Steven G. Calabresi & Gary S. Lawson, *The Unitary Executive, Jurisdiction Stripping, and the* Hamdan *Opinions: A Textualist Response to Justice Scalia*, 107 Colum. L. Rev. 1002, 1005 (2007); Akhil Reed Amar, *America's Constitution: A Biography* 226–29 (2006).

Congress is "bound to create some inferior courts, in which to vest all that jurisdiction which, under the constitution, is *exclusively* vested in the United States, and of which the supreme court cannot take original cognizance." *Martin v. Hunter's Lessee*, 14 U.S. 304, 331 (1816). Congress "might establish one or more inferior courts," and "[Congress] might

parcel out the jurisdiction among such courts, from time to time, at [Congress's] own pleasure." *Id.* But, that means, "the whole judicial power of the United States should be, at all times, vested either in an original or appellate form, in some courts created under [the Constitution's] authority." *Id.*; *see also The Federalist No. 82*, at 556 (Hamilton) (Cooke ed. 1961) ("[A]ll causes of the specific classes" named in Article III "shall, for weighty public reasons, receive their original or final determination in the courts of the Union.").

As explained above, if the FCUA deprives district courts of the jurisdiction to hear Moats's claim that the NCUA's adjudication is unconstitutional, his right not to be subject to an unconstitutionally structured decisionmaker is "effectively lost" because "review [would be] deferred until after trial." *Axon*, 598 U.S. at 192. Retrospective or after-the-fact relief for structural constitutional violations is materially different than prospective or before-the-fact relief—or even other constitutional claims—because structural claims cannot be remedied once they have occurred. *Axon* recognized, correctly, that retrospective relief "come[s] too late to be meaningful." *Id.* at 191.[7]

---

[7] There is also the additional requirement for seeking retrospective relief: plaintiffs must show "compensable harm." *Collins v. Yellen*, 594 U.S. 220, 259 (2021). That is not a requirement for prospective relief. Given *Collins*, the only viable path to meaningful judicial relief for structural constitutional harms is for federal-court plaintiffs like Moats to seek prospective relief. *See Cochran v. SEC*, 20 F.4th 194, 233 (5th Cir. 2021)

23

While Congress has latitude to "parcel out" jurisdiction among the courts, the "whole judicial power of the United States should be, at all times, vested either in an original or appellate form, in some courts created under its authority." *Martin*, 14 U.S. at 331. If the FCUA is read to preclude an *ex ante* remedy (the only meaningful remedy, according to *Axon*) for a violation of Moats's structural claim, then Congress has barred the judicial power from extending to a constitutional case or controversy. Denying meaningful relief for a constitutional claim, properly and timely asserted, would put to the test Chief Justice John Marshall's reflection that "[t]he government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (quoting 3 William Blackstone, *Commentaries on the Laws of England* 23 ("[E]very right, when withheld, must have a remedy, and every injury its proper redress.")).

In sum, construing FCUA's statutory scheme to bar Moats's claims would render it unconstitutional as applied. This Court can and should "avoi[d] the 'serious constitutional question' that would arise if [it]

---

(en banc) (Oldham, J., concurring), *aff'd, sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) (explaining that after *Collins*, plaintiffs with meritorious structural constitutional claims "may often be left without any remedy if they are forced to wait until after enforcement proceedings conclude").

construed [the FCUA] to deny a judicial forum for constitutional claims" and adopt the better reading put forward in Part I. *Bowen*, 476 U.S. at 681 n.12.

## Conclusion

The Court should hold that the Federal Credit Union Act does not prohibit district courts from deciding structural constitutional claims about the validity of NCUA/OFIA adjudication before the pending adjudication occurs. Alternatively, the Court should hold that if the Federal Credit Union Act precludes jurisdiction over such claims, such a bar on the federal courts' exercise of Article III judicial power is unconstitutional as applied here. Either way, the Court should reverse and vacate the District Court's decision and judgment, and remand for the District Court to reach the merits of Moats's claims.

DATED: November 27, 2024.

Respectfully submitted,

/s/ Aditya Dynar
ADITYA DYNAR
MOLLY E. NIXON
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
Telephone: 202.888.6881
ADynar@pacificlegal.org
MNixon@pacificlegal.org
*Counsel for Plaintiff-Appellant*

## Certificate of Service

I hereby certify that on November 27, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Aditya Dynar
ADITYA DYNAR
*Counsel for Plaintiff-Appellant*

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with [the type-volume limit of Fed. R. App. P. 32(a)(7)(B)]] [the word limit of Fed. R. App. P. 5(c)(1)]] because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    **X** this document contains 5,686 words, or

this brief uses a monospaced typeface and contains [state the number of] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    **X** this document has been prepared in a proportionally spaced typeface using **Microsoft Word for Microsoft 365 in 14 pt. Century**, or

this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

    DATED: November 27, 2024.

                /s/ Aditya Dynar
                ADITYA DYNAR
                *Counsel for Plaintiff-Appellant*