No. 24-40259

# In the United States Court of Appeals for the Fifth Circuit

JEFFREY MOATS,
*Plaintiff-Appellant,*

*v.*

NATIONAL CREDIT UNION ADMINISTRATION BOARD, TODD M. HARPER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NATIONAL CREDIT UNION ADMINISTRATION BOARD, KYLE S. HAUPTMAN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NATIONAL CREDIT UNION ADMINISTRATION BOARD, RODNEY E. HOOD, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NATIONAL CREDIT UNION ADMINISTRATION BOARD, AND JENNIFER WHANG, IN HER OFFICIAL CAPACITY AS AN ADMINISTRATIVE LAW JUDGE,

*Defendants-Appellees.*

On Appeal from the U.S. District Court for the Southern District of Texas (Galveston Div.), No. 3-23-cv-00147, Hon. Jeffrey V. Brown

**BRIEF *AMICUS CURIAE* OF THE NEW CIVIL LIBERTIES ALLIANCE IN SUPPORT OF PLAINTIFF-APPELLANT**

Margaret A. Little
   *Counsel of Record*
Russell G. Ryan
Markham S. Chenoweth
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
(202) 869-5210
peggy.little@ncla.legal

October 16, 2025           *Counsel for* Amicus Curiae

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES .........iv

CORPORATE DISCLOSURE STATEMENT..............................................v

STATEMENT REGARDING CONSENT TO FILE................................vi

INTERESTS OF AMICUS CURIAE ........................................................ 1

STATEMENT OF THE CASE ................................................................3

ARGUMENT ...................................................................................5

   I. THE PANEL DECISION CONFLICTS WITH THE SUPREME COURT'S PRINCIPAL HOLDING IN *JARKESY* ........................................................5

   II. THE CASES CITED BY THE PANEL DO NOT SUPPORT ITS JURISDICTION-STRIPPING CONCLUSIONS.......................................... 10

CONCLUSION .................................................................................11

CERTIFICATE OF COMPLIANCE ....................................................... 12

CERTIFICATE OF SERVICE............................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Axon Enter. v. FTC/SEC v. Cochran*,
  598 U.S. 175 (2023) .................................................................................. 3, 10

*Bank of La. v. FDIC*,
  919 F.3d 916 (5th Cir. 2019) ............................................................................ 4, 10

*Burgess v. Whang*,
  152 F.4th 579 (5th Cir. 2025) ........................................................................... 3, 10

*Collins v. Dep't of Treasury*,
  83 F.4th 970 (5th Cir. 2023) ................................................................................... 4

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ................................................................................. 7

*Martin v. Hunter's Lessee*,
  14 U.S. (1 Wheat.) 304 (1816) ........................................................................... 7, 8

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  59 U.S. (18 How.) 272 (1856) ................................................................................. 9

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995) ............................................................................................... 7

*SEC v. Jarkesy*,
  603 U.S. 109 (2024) ............................................................................................... 6

*Stern v. Marshall*,
  564 U.S. 462 (2011) ............................................................................................... 9

**Other Authorities**

Philip Hamburger, *Nondelegation Blues*,
  91 Geo. Wash. L. Rev. 1083 (2023) ........................................................................ 8

The Federalist No. 78
  (Alexander Hamilton) (Cooke ed. 1961) ................................................................ 9

**Rules**

Fed. R. App. P. 40(b)(2)(B) ................................................................... 2, 4, 11

**Constitutional Provisions**

U.S. Const., art. I, § 8 cl. 9 ................................................................... 8

**SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES**

The undersigned counsel for *amicus curiae* certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1, in addition to those listed in the Petitioners' Certificate of Interested Persons, have an interest in the outcome of the case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Amicus Curiae:* The New Civil Liberties Alliance—a nonpartisan, nonprofit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in it.

*Counsel for Amicus Curiae:* Margaret A. Little and Russell G. Ryan are Senior Litigation Counsel of the New Civil Liberties Alliance. Markham S. Chenoweth is President and Chief Legal Officer of NCLA. They represent the New Civil Liberties Alliance in this matter.

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel states that *amicus curiae* New Civil Liberties Alliance is a nonprofit organization under the laws of the District of Columbia. It has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

/s/ *Margaret A. Little*
Margaret A. Little

## STATEMENT REGARDING CONSENT TO FILE

The New Civil Liberties Alliance certifies that it timely sought and received consent from all parties to the filing of this brief.

/s/ <u>*Margaret A. Little*</u>
Margaret A. Little

## INTERESTS OF AMICUS CURIAE

The New Civil Liberties Alliance ("NCLA") is a nonpartisan, nonprofit civil-rights organization devoted to defending constitutional freedoms from the administrative state's depredations.[1] The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself such as due process of law, the right to have executive power exercised only by actors directed by the President, and the right to a trial by jury, which is at stake in this appeal. Yet these selfsame rights are also very contemporary—and in dire need of renewed vindication—because Congress, federal administrative agencies, and even sometimes the courts have neglected them for so long.

NCLA aims to defend civil liberties—primarily by reasserting constitutional constraints on the administrative state. Although Americans still enjoy the shell of their Republic, there has developed within it a very different sort of government—a type, in fact, that the

---

[1] NCLA states that no counsel for a party authored this brief in whole or in part; and that no person or entity, other than NCLA and its counsel, made a monetary contribution intended to fund the preparation and submission of this brief.

Constitution was designed to prevent. This unconstitutional administrative state within the Constitution's United States is the focus of NCLA's concern.

This petition presents a question of exceptional importance: Can Congress channel punitive enforcement actions away from fora controlled by common citizens—Article III courts with civil juries—and into administrative hearings where bureaucrats serve as judges, juries, factfinders and sentencers? That usurpation by the select few of powers that rightfully belong to the people is present here, where the National Credit Union Administration Board ("NCUAB") adjudicates claims of fraud—claims that are traditional common law causes of action—before an administrative tribunal and without a jury. Congress cannot deny Americans access to Article III courts before an impartial adjudicator and a jury when reputations, financial security, and constitutionally protected property interests are at risk.

Because the panel decision is in conflict not only with the law of this Circuit, as ably set forth in Mr. Moats's petition, but with the Supreme Court's controlling holding in *Jarkesy*, the panel decision should be reheard *en banc*. See Fed. R. App. P. 40(b)(2)(B).

## STATEMENT OF THE CASE

In 2023, NCUAB commenced agency proceedings against Jeffrey Moats, alleging that Moats had committed fraud, and sought a $5 million penalty and a lifetime industry bar. By agreement of the parties, a stay of that administrative proceeding entered before any substantive action by the Administrative Law Judge (ALJ), which stay is still in place.

This petition for review raises two challenges to the panel decision in this case but also to the same panel's decision in the separate case of *Burgess v. Whang*, 152 F.4th 579 (5th Cir. 2025). This is because the *Moats* panel decision stated that "our holding in *Burgess* regarding [12 U.S.C.] § 1818's explicit jurisdictional preclusion controls here." Slip Op. 6. Specifically, Mr. Moats argues (1) that *Axon Enterprise v. FTC/SEC v. Cochran*, 598 U.S. 175, 208 (2023) requires that "structural constitutional objections … must be resolved by federal district courts in the first instance before the complained-of administrative adjudication occurs;" Pet. at 1, and (2) Article II agencies can exercise no part of Article III power.

In discussing these two challenges, the Petition noted that this Circuit's law is in some disarray, with the panel giving "law of the circuit"

3

weight to *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019) over the post-*Axon/Cochran* and later-decided *Collins v. Department of Treasury*, 83 F.4th 970 (5th Cir. 2023), which applied *Axon/Cochran* to find jurisdiction despite a jurisdiction-stripping statute in the Treasury scheme. Pet. at 14. The *en banc* court should certainly clear up the question of whether *Collins* is "nonbinding dicta." *See id.* Petitioner further argues that the canon of constitutional avoidance and the clear statement rule conflicts with both the *Moats* and *Burgess* decisions' conclusions that the jurisdiction-stripping statutes of both the FDIC and NCUAB regimes explicitly strip jurisdiction. *See id.* at 3.

While NCLA agrees that (1) *Axon/Cochran* requires district court jurisdiction for Mr. Moats's constitutional claims, (2) that the panel decisions conflict with the law of this Circuit, and (3) that the interpretive canon of constitutional avoidance and the clear statement rule also make the case for rehearing, this *amicus* brief addresses why the panel's failure to address *Jarkesy*'s jurisdictional holding warrants rehearing *en banc*, on an issue of exceptional importance across administrative agencies. Fed. R. App. P. 40(b)(2)(B).

**ARGUMENT**

Congress cannot evade Article III's requirements merely by stripping jurisdiction from an Article III court and reassigning it to an administrative agency. Were such a move to receive judicial blessing, both Article III and the Seventh Amendment would be drained of their functions, and the constitutional rights *guaranteed* by those provisions would be at the mercy of mere acts of Congress—eviscerating the whole idea of a *constitutional* right and the Constitution's structural vesting of distinct powers in each branch.

I. **THE PANEL DECISION CONFLICTS WITH THE SUPREME COURT'S PRINCIPAL HOLDING IN *JARKESY***

The Supreme Court's *Jarkesy* opinion did not solely decide the scope of, or the protections afforded by, the Seventh Amendment. Rather—and the Court was explicit on this point—the decision equally dealt with the limitations that Article III imposes on Congress's ability to delegate judicial functions to non-Article III tribunals. Specifically, *Jarkesy* held, "the judicial Power of the United States cannot be shared with the other branches … Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decisionmaking

5

if the other branches of the Federal Government could confer the Government's judicial Power on entities outside Article III … A defendant facing a fraud suit has the right to be tried by a jury of his peers *before a neutral adjudicator.*" See 603 U.S. 109, 127-132, 140 (2024) (emphasis added) (citations omitted).[2]

Relocating judicial power, even with explicit statutory authorization, as Congress did in the NCUAB scheme, violates Article III's Vesting Clause, which allows the judicial power of the United States to be exercised only by courts created under that Article. Because only courts—and not Congress—possess this "judicial power," Congress cannot delegate a power it does not itself possess to any other branch. In short, *Jarkesy* squarely forecloses the panel's conclusion that Congress permissibly divested courts of Article III jurisdiction.

The principle that the Constitution unambiguously vests judicial power solely in courts resounds over centuries of case law, from *Marbury*

---

[2] Even the dissenting Justices recognized that the principal issue in *Jarkesy* was the scope of Article III. *See Jarkesy*, 603 U.S. at 171 (Sotomayor, J., dissenting) ("Although this case involves a Seventh Amendment challenge, the principal question at issue is one rooted in Article III and the separation of powers.").

*v. Madison*'s recognition of this demarcation—it is "emphatically the province and duty of the judicial department to say what the law is[,]" 5 U.S. (1 Cranch) 137, 177 (1803)—to cases such as *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995), where the Court held that § 27A of the Securities Exchange Act of 1934 violated the separation of powers. ("Congress cannot vest review of the decisions of Article III courts in officials of the Executive Branch.").

In *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304 (1816), Justice Story emphatically explained that the vesting of judicial power in Article III courts is "manifestly designed to be mandatory upon the legislature. Its obligatory force is so imperative, that [C]ongress could not, without a violation of its duty, have refused to carry it into operation." *Id.* at 328. And it is Congress's "duty to vest the *whole judicial power*," *id.* at 330 (emphasis in original), and to do so "in one supreme court, and in such inferior courts as congress may, from time to time, ordain and establish," *id.* at 328, under Article III of the Constitution. The *Hunter's Lessee* Court was explicit: Congress cannot vest *judicial* power in any body other than courts created under Article III. *Id.* at 330. "[S]uch a construction … would be utterly inadmissible." *Id.*

7

To be sure, Congress has significant power over the organization and jurisdiction of the courts. Article III allows Congress to designate the location of part of the judicial power—but only in "inferior *courts*," not other bodies. Congress therefore cannot deposit *judicial* power in NCUAB or any other administrative agency. *See id.* at 331 (Congress "might establish one or more inferior courts; [it] might parcel out the jurisdiction among such courts, from time to time, at [its] own pleasure. But the whole judicial power of the United States should be, at all times, vested either in an original or appellate form, in some courts created under [the United States'] authority."); *See also* Philip Hamburger, *Nondelegation Blues*, 91 Geo. Wash. L. Rev. 1083, 1110-12 (2023).

Because Article I empowers Congress to "constitute Tribunals inferior to the Supreme Court," U.S. Const., art. I, § 8 cl. 9, it might be thought that Congress could place the judicial power in "Tribunals" within NCUAB, which are not inferior courts. But this notion confuses the "courts," which exercise the judicial power of the United States, with the host of tribunals that do not and cannot exercise that judicial power, such as territorial and District of Columbia courts, which exercise the judicial power, respectively, of the territories and that district, not that

8

of the United States.[3]

Congress's separate power to constitute tribunals does not empower it to relocate the judicial power of the United States in bodies that are not inferior courts, and certainly not in bodies outside Article III such as executive agencies. In *Stern v. Marshall*, the Supreme Court stated that "Article III could neither serve its purpose … nor preserve the integrity of judicial decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial power' on entities outside Article III." 564 U.S. 462, 484 (2011). Congress simply cannot shift judicial power from one branch to another—especially not to the prosecutor! That danger was expressly articulated at the Founding. "[T]here is no liberty, if the power of judging be not separated from the legislative and executive powers." The Federalist No. 78, at 523 (Alexander Hamilton) (Cooke ed. 1961).

---

[3] Congress also has the power to establish a non-Article III court such as the Court of Federal Claims, but only because the United States has sovereign immunity, and may waive it on such terms as it deems fit. *See, e.g., Stern v. Marshall*, 564 U.S. 462, 489 (2011), *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272 (1856).

## II. THE CASES CITED BY THE PANEL DO NOT SUPPORT ITS JURISDICTION-STRIPPING CONCLUSIONS

The *Burgess* panel decision relied heavily on *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019). But *Bank of Louisiana* was decided five years before *Jarkesy*, and thus did not take that decision into account. Likewise, the panel stated "it is no surprise that other courts recently interpreting § 1818(i)(1) have concluded that it explicitly precludes jurisdiction." *Burgess*, 152 F.4th at 589 (citing *Bonan v. FDIC*, No. 4:23CV8, 2023 WL 156852, at *4 (E.D. Mo. Jan 11, 2023); *Ponte v. FDIC*, No. 1:23-cv-00165, 2023 WL 6441976, at *2 (D.R.I. Oct. 3, 2023) (*Ponte I*); *Ponte v. FDIC*, No. 24-cv-2379, 2024 WL 4730602, at *8 (D.D.C. Oct. 11, 2024) (*Ponte II*)). Both *Bonan* and *Ponte I* predate *Jarkesy* and so, just like *Bank of Louisiana*, did not have the benefit of *Jarkesy*'s jurisdictional holding. The ruling in *Ponte II* held that issue preclusion (collateral estoppel) barred Mr. Ponte from relitigating his earlier challenge, including his jurisdictional claim. Finally, Justice Gorsuch's discussion of § 1818 in his concurrence in *Axon Enterprise v. FTC/SEC v. Cochran*, 598 U.S. 175, 208 (2023) also predated *Jarkesy* and further said nothing about stripping jurisdiction over *constitutional*

10

claims.

In short, this "chorus" of holdings consists almost entirely of cases that predate *Jarkesy* or, in the case of *Ponte II*, were decided on the unrelated basis of collateral estoppel and, at best, a reading of *Jarkesy* that was blind to the scope of its Article III jurisdictional holding.

## CONCLUSION

The petition for rehearing *en banc* should be granted because the panel decision "conflicts with a decision of the United States Supreme Court," namely *Jarkesy*. Fed. R. App. P. 40(b)(2)(B).

                    Respectfully submitted,

                    /s/ *Margaret A. Little*
                    Margaret A. Little
                        *Counsel of Record*
                    Russell G. Ryan
                    Markham S. Chenoweth
                    NEW CIVIL LIBERTIES ALLIANCE
                    4250 N. Fairfax Drive, Suite 300
                    Arlington, VA 22203
                    (202) 869-5210
                    peggy.little@ncla.legal

Dated: October 16, 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 2,073 words. This brief also complies with the typeface and type-style requirements of the Federal Rule of Appellate Procedure because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Margaret A. Little*
Margaret A. Little

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ *Margaret A. Little*
Margaret A. Little
